UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HUNZA G LIMITED,

                    Plaintiff,

        v.

LOVE AND BIKINIS, INC.,

                    Defendant.

No. 25 CV 8487 (LAP)

ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant's motion to transfer the action to the Northern District of Texas pursuant to 18 U.S.C. § 1404(a), (dkt. no. 27). Plaintiff has opposed, (dkt. no. 31), and Defendant has replied, (dkt. no. 34). For the reasons set out below, the motion is GRANTED.[1]

**I.    Facts**

Plaintiff, Hunza G Limited, is a fashion brand based in London, U.K. (Complaint ("Compl.") ¶ 6). Defendant, Love and Bikinis, Inc., is a Texas corporation founded in Houston, Texas. (Id. ¶ 7.) The underlying dispute involves the parties' claims to the trademark THE ORIGINAL CRINKLE in connection with swimwear. (Id. ¶ 2.) As set forth in detail in the Declaration of Sophie Thompson dated February 13, 2026, (dkt. no. 32), Hunza G is a

---

[1] Also pending is Defendant's motion to dismiss for lack of personal jurisdiction, (dkt. no. 27). The Court declines to decide that motion at this time.

1

private company incorporated in the United Kingdom, (Thompson Decl. ¶ 3).  Its swimsuits have been sold at more than ten physical retail locations in New York, (id. ¶ 4), and Hunza G has engaged in multiple marketing and sales activities in New York, (id. 6).  Hunza G's Founder, Creative Director, and its CEO regularly travel to New York, and Hunza G works with multiple business partners in New York including DLX NYC, a prominent global PR firm.  (Id. ¶¶ 7, 9).

As set forth in detail in the Declaration of Olga Parks, executed February 3, 2026, (dkt. no. 30) ("Parks Decl."), the Defendant began operations in 2017 in Houston, Texas, and began using THE ORIGINAL CRINKLE mark in connection with swimwear shortly thereafter.  (Parks Decl. ¶ 3.)  The company relocated to Florida from 2020-2024 and, in January of 2024, moved back to the Dallas-Fort Worth area.  (Id. ¶¶ 3-4.)  All of the company's business documents are maintained in its Richardson, Texas office, also in the Dallas-Forth Worth area.  (Id. ¶ 4.)  This includes documents related to its decision to use the mark THE ORIGINAL CRINKLE in connection with swimwear marketing and documents related to the supply deal with the original creator of the "crinkle" swimwear fabric.  (Id. ¶ 4.)

All of Defendant's employees are in the Dallas-Forth Worth area, and the company has no employees in New York.  (Id. ¶ 5.) Defendant made only one shipment of products bearing the mark THE

2

ORIGINAL CRINKLE to a retailer's Dallas-area distribution center which the retailer, Everything But Water, then sold nationwide. (Id. ¶ 7.)  The products Defendant has shipped across the United States, including directly to New York, do not bear the mark THE ORIGINAL CRINKLE on the hangtags, labels or packaging.  (Id.) Rather, Defendant's use of THE ORIGINAL CRINKLE has been through its website, in posts on social media, in emails to wholesale customers, on linesheets to wholesalers, and at trade shows outside of New York, all of which have no specific targeting or direction at New York over any other jurisdiction.  (Id. ¶ 8-9.)

## II.  Legal Standard

A district court may transfer a civil action to any other district "[f]or the convenience of parties and witnesses" and "in the interest of justice."  28 U.S.C. § 1404(a).  As the Court of Appeals has explained, this Court has "broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are decided on a case-by-case basis." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006).

In deciding a motion to transfer venue, this Court first inquires "whether the action could have been brought in the transferee district, and, if yes, whether transfer would be an appropriate exercise of the Court's discretion."  Robertson v. Cartinhour, 2011 WL 5175597, at *3 (S.D.N.Y. Oct. 28, 2011).

3

Second, in assessing whether transfer is appropriate, the Court weighs several factors, including:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties."

D.H. Blair & Co., 462 F.3d at 106-07 (citation omitted). In addition, "[c]ourts in this district have also considered (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interest of justice." Guardian Life Ins. Co. of Am. v. Coe, 724 F. Supp. 3d 206, 213 (S.D.N.Y. 2024) (quotation marks and citation omitted). Lastly, "[i]n deciding a motion to transfer, a court may consider material outside of the pleadings." Idle Media, Inc. v. Create Music Grp., Inc., 2024 WL 5009713, at *1 (S.D.N.Y. Dec. 6, 2024) (quotation marks and citation omitted).

## III. Discussion

### A. Plaintiff Could Have Commenced Its Suit in Texas

Plaintiff, a U.K. company, (Compl. ¶ 6), alleges that it uses its claimed mark and sells its swimwear "throughout the United States" (id. ¶¶ 19, 22) and that Defendant uses its claimed mark and sells its swimwear "throughout the United States," (id. ¶¶ 29-31). Plaintiff also alleges that the consuming public of "the United States" associates Plaintiff's purported mark with Plaintiff. (Id. ¶ 24). Because Defendant "resides" and has an

4

"established place of business" in the Northern District of Texas, that district is proper venue for the action.  See NextEngine Inc. v. NextEngine, Inc., 2019 WL 79019, at *5 (S.D.N.Y. Jan. 2, 2019) (granting transfer to defendant's home district).  Accordingly, Plaintiff could have brought its suit in the Northern District of Texas.

### A. The Transfer Factors Favor Transfer to the Northern District of Texas

"Convenience of witnesses 'is generally the most important factor.'" USA Interactive v. Savannah Air Ctr., LLC, 2002 WL 1808236, at *2 (S.D.N.Y. Aug. 7, 2002). Defendant and all of its witnesses are located in Texas, as are its main offices where it keeps all of its documents, including those it would use in its defense of this action such as its decision to select and use THE ORIGINAL CRINKLE. (Parks Decl. ¶¶ 4-5; Reply Declaration of Olga Parks dated February 20, 2026 (dkt. no. 36)("Parks Reply Decl." ¶ 6.)

In contrast, Plaintiff does not dispute that it has no office in New York, does not reside here, and is not registered to do business here. It also does not contest that Defendant and all its witnesses are in Texas. Plaintiff instead points to "connections" with New York (Opp. at 16), but the majority of these are not unique to New York, and many apply equally to Texas and therefore do not demonstrate New York is more

5

convenient than Texas. See CYI, Inc. v. Ja-Ru, Inc., 913 F. Supp. 2d 16, 25 (S.D.N.Y. 2012) (factor weighed in favor of transfer where transferee forum was "certainly more convenient than the Southern District of New York").

For example, Plaintiff appears to ship products throughout the U.S. through Texas. (See Reply Lackman Decl., Ex. A at 13 (customer complaining Plaintiff's shipment "took 5 days to clear customs in Texas" before delivery to customer's hometown)). Ironically, Plaintiff also refers to its relevant products as its "Dallas" collection. (See Compl. ¶ 22.) Multiple Texas retailers carry Plaintiff's products, including the major Texas-based retailer, St. Bernard. (See Park Reply Decl. ¶¶ 2-4.)

Plaintiff's argument that the flight time from London to New York is shorter than from London to Texas has been explicitly rejected because "[i]f courts were to accept this line of argument, 'the federal courts in New York (and, perhaps, a few other jurisdictions with U.S. 'gateway' airports) would become the courts of convenience' for most foreigners." Paysafe Holdings UK Ltd. v. Accruit, LLC, 2019 WL 1115054, at *7 (S.D.N.Y. Mar. 11, 2019).

As for the locus of operative facts, that locus is in Texas, not New York. As one court in this District found in an analogous case, "the locus of facts pertaining to the alleged infringement and unfair competition" was Defendant's "nerve center and

6

principal place of business[.]" NextEngine Inc., 2019 WL 79019, at *5. So too, here. Defendant's principal place of business and nerve center is Dallas where it has its headquarters and facilitates distribution of its products. Use of THE ORIGINAL CRINKLE mark occurs on Defendant's website, which it has operated from Texas since at least early 2024 (before Plaintiff's priority date self-reported to the USPTO), not New York or any other venue, and Defendant targets no forum or set of consumers within the United States in particular over any others (including New York). Thus, this factor weighs strongly in favor of transfer. See id.; see also Alden Corp. v. Eazypower Corp., 294 F. Supp. 2d 233, 238 (D. Conn. 2003) ("Any 'locus' of the essentially nationwide operative facts in this case is at the defendant's place of business in Illinois, where the actions creating Eazypower's alleged liability took place"; transferring patent infringement action); Everest Cap. Ltd. v. Everest Funds Mgmt., L.L.C., 178 F. Supp. 2d 459, 467 (S.D.N.Y. 2002) ("Where there has been no allegation that either party resides in this District or that the alleged infringer conducts business in this District, it is reasonable to conclude that this District is not the locus of operative facts"; transferring trademark infringement action). Thus, the locus of operative facts factor favors transfer.

The factors related to the adequacy of the forum – compelling witnesses to appear and familiarity with government law – are

mutual. Both districts "equally competent to hear" the federal claims, CYI, 913 F. Supp. 2d at 25, while the New York common law claims are substantially identical to the federal claims and corresponding common law claims in Texas. See OffWhite Prods., LLC v. Off-White LLC, 480 F. Supp. 3d 558, 563 (S.D.N.Y. 2020) ("[t]he elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law 'mirror the Lanham Act claims,' except that unfair competition 'requires an additional showing of bad faith.'" (citation omitted)); Gracie Baked LLC v. GiftRocket, Inc., 2025 WL 3706651, at *7 (E.D.N.Y. Dec. 22, 2025) (finding no conflict of law between New York and Texas common law unfair competition claims because the relevant standards are "essentially the same as under the Lanham Act" (citations omitted)); see also Everest Cap. Ltd., 178 F. Supp. 2d at 468 ("Although Everest Capital asserts state law claims, such claims are corollary to their federal trademark claims and do not present complex questions of law"). Thus, the adequacy of the forum factor is neutral.

Plaintiff's selection of New York as the forum should be afforded little, if any, weight as "[t]he weight normally accorded to the plaintiff's choice of forum is diminished substantially where plaintiff has chosen a forum which is neither his home nor the place where the cause of action arose." Paysafe Holdings UK Ltd. v. Accruit, LLC, 2019 WL 1115054, at *4-5 (S.D.N.Y. Mar. 11,

2019). In fact, given that Plaintiff cannot show "'that relevant evidence is likely to be located in the chosen district, [its] choice of a non-home district may indicate forum shopping,' activity federal courts are loath to reward." Id. (citation omitted). Here, as noted above, Plaintiff is a U.K. entity, and the operative facts "bear little connection to this District" and certainly not more than the Northern District of Texas. Id. Accordingly, Plaintiff's choice of forum is entitled to little, if any, weight.

### B. Conclusion

For the reasons set out above, Defendant's motion to transfer the action to the Northern District of Texas pursuant to 18 U.S.C. § 1404(a), (dkt. no. 27) is granted.

The motion to dismiss (dkt. no. 27) is denied without prejudice to refiling. Plaintiff's letter motion for a Local Rule 37.2 conference is denied as moot.

The Clerk of the Court shall transfer this action to the Northern District of Texas and close docket numbers 27 and 37.

**SO ORDERED.**

Dated:    April 30, 2026
          New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge

9